IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TERRY NORRIS                                                                         PLAINTIFF

VS.                          CIVIL NO. 06-2024

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION          DEFENDANT

### MEMORANDUM OPINION

Terry Norris ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on July 17, 2003, alleging an amended onset date of October 20, 2003, due to arthritis, chronic pain, and cardiac arrhythmia. (Tr. 63-65). An administrative hearing was held on November 19, 204. (Tr. 495-523).

At the time of the administrative hearing, plaintiff was fifty-one years old and possessed the equivalent of a high school education. (Tr. 15). The record reveals that he had past relevant work ("PRW") experience as an inventory clerk. (Tr. 15).

The Administrative Law Judge ("ALJ"), rendered an unfavorable decision on April 21, 2005. (Tr. 15–23). He concluded that plaintiff's impairments were severe but determined that they did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 22). The ALJ then found that plaintiff retained the residual functional capacity ("RFC") to perform a significant range of unskilled light work requiring occasional stooping and crouching. (Tr.

AO72A
(Rev. 8/82)

20). Utilizing the Medical-Vocational Guidelines (the "Grids") and the testimony of a vocational expert, the ALJ then concluded that plaintiff could perform work that exists in significant numbers in the national economy. (Tr. 22-23). Specifically, he determined that plaintiff could perform work as an unskilled poultry worker or assembler. (Tr. 21).

On January 16, 2006, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 10, 11).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

2

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, plaintiff has been diagnosed with a heart condition. The pertinent medical records reveal as follows. On September 21, 2004, following complaints of chest pain and tightness, plaintiff underwent a nuclear perfusion test. (Tr. 131). The results revealed a moderate to large reversible defect in the inferior septal and apical segments, consistent with right coronary ischemia. (Tr. 132). His left ventricular ejection fraction rate was said to be fifty-three percent. As such, plaintiff was referred for cardiac catheterization and prescribed Isosorbide Dinitrate[1] and daily Asprin,

---

[1] Isosorbide Dinitrate or Isordil is prescribed to "relieve or prevent angina pectoris (suffocating chest pain)." *See* Isordil, *at* www.pdrhealth.com.

in addition to Metoprolol.[2] (Tr. 132). Pulmonary function tests also revealed a forced expiratory vital capacity of only eighty-four percent. (Tr. 173).

A cardiac catheterization dated December 21, 2004, revealed multivessel disease of the right coronary artery, left anterior descending artery, and left circumflex artery. (Tr. 164). His ejection fraction rate was noted to be normal with mild anterior hypokinesis. Accordingly, plaintiff was referred for a surgical consultation and possible multivessel coronary artery bypass graft ("CABG"). (Tr. 164). Following a cardiac evaluation, it was recommended that he undergo CABG. (Tr. 166). In spite of the risks, however, plaintiff indicated that he wanted to go home for the holidays. (Tr. 166). He was released with instructions to perform only light, non-stressful activities and to return to the emergency room if he experienced chest pain, shortness of breath, nausea, vomiting, dizziness, fainting, chills, or a fever of 101 degrees or more. (Tr. 166).

On January 20, 2005, plaintiff underwent quadruple coronary artery bypass surgery. (Tr. 306). A few days later, plaintiff required a blood transfusion. (Tr. 255). On February 2, 2005, plaintiff underwent an echocardiogram and Doppler studies. His ejection fraction was said to be thirty to thirty-five percent. (Tr. 211). Further, plaintiff's white blood count cell was elevated for no apparent reason. (Tr. 200-254).

On February 4, 2005, plaintiff was discharged into the care of the Veteran's Administration ("VA") for telemetry, monitoring of his white blood count, and physical therapy. (Tr. 204). He remained at the VA until February 8, 2005, at which time he was discharged with home health

---

[2]Metoprolol or Lopressor is a beta blocker used to treat high blood pressure, angina pectoris, and heart attack. *See* Lopressor, *at* www.pdrhealth.com.

services. (Tr. 372). At the time of discharge, plaintiff was instructed not to drive while taking Percocet and not to lift over ten pounds for six weeks or over twenty pounds for three months. (Tr. 372). In addition, plaintiff was told not to use his arms for pushing, pulling, sweeping, raking, or other activities for six to eight weeks. Further, he was instructed to elevate his legs when sitting down. (Tr. 415).

A chest x-ray on February 23, 2005, was suspicious for pleural effusion. (Tr. 358). At this time, plaintiff rated his pain as a seven on a scale of one to ten. (Tr. 403).

While the ALJ does note that plaintiff underwent heart surgery in January 2005, he states that plaintiff experienced no complications following surgery. As the record clearly reveals, plaintiff had to undergo a blood transfusion following surgery and also suffered from a post-surgical infection. Further, plaintiff's treating physician limited his activities for the first two to three months following surgery. The record does not contain an RFC assessment from plaintiff's treating physician indicating the level of activity plaintiff was capable of performing at the time of the ALJ's decision. In fact, the record is devoid of any medical evidence to establish plaintiff's ability to function in the workplace. The only RFC assessment contained in the file is dated March 2004 and indicates that plaintiff had a non-severe impairment. (Tr. 127). The non-examining, consultative physician completing the assessment did not provide an evaluation of plaintiff's ability to perform work-related activities. As such, we believe that remand is necessary to allow the ALJ to obtain an RFC assessments from plaintiff's treating doctors. *See Lewis,* 353 F.3d at 646.

On remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a

mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

We also note that plaintiff underwent a psychological evaluation with Dr. Patricia Walz, a psychologist, in January 2005. Following her evaluation, she determined that plaintiff had only a fair ability to relate to co-workers, deal with the public, interact with supervisors, and deal with work stresses. (Tr. 155). She also rated plaintiff's ability to behave in an emotionally stable manner as good to fair. (Tr. 156). The ALJ notes Dr. Walz's evaluation and states that he has utilized these nonexertional limitations in his determination that plaintiff can perform only unskilled work. However, these limitations are not included in the ALJ's RFC assessment. Accordingly, on remand, the ALJ is also directed to reevaluate plaintiff's mental RFC. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).

**Conclusion:**

Based on the foregoing, we reverse the ALJ's decision and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 10th day of January 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)